IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| 1200 ASHLAND, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 6241 |
| v. | ) | |
| | ) | |
| LAWYERS TITLE INSURANCE, | ) | JUDGE DAVID H. COAR |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff 1200 Ashland, LLC ("1200 Ashland") brings an action for declaratory judgment and breach of contract against Defendant Lawyers Title Insurance Corporation ("Lawyers Title"). 1200 Ashland seeks a declaration that, pursuant to Zoning Endorsement 3.1 of the Owner's Policy of Title Insurance issued by Lawyers Title, it is entitled to coverage and indemnification for damages suffered by reason of an erroneous zoning classification in the endorsement. 1200 Ashland also contends that Lawyers Title breached its title insurance contract obligations. The instant matter proceeded to bench trial on July 26, 2010. Based on the trial and the parties' pre-trial and post-trial submissions, the Court now sets forth its findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a).[1]

**FINDINGS OF FACT**

**A.     Parties**

1. 1200 Ashland is an Illinois limited liability company that has its principal office in Chicago, Illinois.

---

[1] To the extent that any findings may be deemed conclusions of law, they shall also be considered conclusions; to the extent that any conclusions may be deemed findings of fact, they shall also be considered findings. *See Miller v. Fenton*, 474 U.S. 104, 113-14 (1985).

1

2. Lawyers Title Insurance Corporation is a Nebraska corporation that is licensed to conduct title insurance business in the state of Illinois. Its principal place of business at the time of removal was in Glen Ellen, Virginia.

**B. The Ashland Property**

3. On December 22-23, 2004, 1200 Ashland closed on the purchase of a piece of commercial real estate, commonly known as 1200 North Ashland Avenue, Chicago, Illinois ("the Property").

4. The law firm of Brown Udell Pomerantz & Delrahim ("Brown Udell") handled the closing on 1200 Ashland's behalf.

5. Near North Title LLC ("Near North"), as issuing agent for Lawyers Title, closed the transaction.

6. Near North issued Lawyers Title Owner's Policy No. A 75-0289800 (the "Owner's Policy"), dated December 23, 2005, to 1200 Ashland.

7. The Amount of Insurance provided by the Owner's Policy was $8,100,000.00.

8. In connection with this real estate closing, Near North also issued a loan policy (the "Loan Policy") to 1200 Ashland's lender, Amcore Bank (the "Lender").

9. Prior to closing – on or about December 16, 2004 – the Lender asked Near North to add a 3.1 zoning endorsement to the Loan Policy.

10. A 3.1 zoning endorsement insures against loss sustained by the insured if the relevant property is not zoned as described in the endorsement.

11. Near North did not receive a request to add a zoning endorsement to the Owner's policy prior to closing.

12. On December 20, 2004, Near North forwarded proformas of the Owner's and Loan Policy to Ashland.

13. In accordance with the Lender's request, the loan proforma included a 3.1 zoning endorsement.

14. The owner's proforma did not include a zoning endorsement.

15. On December 22-23, the only persons present at the closing were Joel Resnick, counsel for 1200 Ashland from Brown Udell, and Susan Rakowski, Near North's commercial escrow officer.

16. Neither Resnick nor Rakowski retain independent recollection of any insurance requests made at the closing.

17. The Loan Policy issued to the Lender, dated December 23, 2004, contained a zoning endorsement. The endorsement insured the zoning classification in Parcel 1 of the Property as B3-2.

18. The December 23, 2004 Combined Closing Statement includes a charge of $900.00 for "Zoning Endorsement," without detailing whether the charge was for insurance under the Loan or Owner's policy.

19. Unlike the Loan policy, the Owner's Policy did not include a zoning endorsement.

**C. The Zoning Defect**

20. In or about May 2006, 1200 Ashland obtained a survey of the property, which showed that the rectangular portion of Parcel 1 of the Property was zoned Business Planned Development No. PD-300 instead of B3-2, as stated in the Lender's zoning endorsement, and later, the Owner's zoning endorsement (the "Zoning Defect").

21. In or around July 2006, 1200 Ashland hired a law firm, Shefsky & Froelich, to change the zoning for Parcel 1 of the Property from PD-300 to B3-2.

22. Jeffrey Brand, general counsel at ALKO Construction and RDM Development, contacted Brown Udell and Near North, regarding a zoning endorsement to the Owner's policy.

23. 1200 Ashland is the single-purpose entity for ALKO Construction and RDM Development in matters of real estate. The owners and principals of ALKO and RDM are members of 1200 Ashland.

24. In October of 2006, Glenn Udell, partner at Brown Udell, directed Tony Valevicius to obtain a copy of the zoning endorsement for the Owner's Policy, among other documents.

25. Valevicius contacted Near North's policy department and made a request for the zoning endorsement.

26. When Near North initially failed to respond, Valevicius followed up with Ray Weldon, Near North's Commercial Title Administrator.

27. Ray Weldon issued orders within Near North to modify the Owner's Policy and add the requested zoning endorsement.

28. Near North issued a 3.1 zoning endorsement and provided 1200 Ashland and Valevicius with copies.

29. Prior to this point, neither 1200 Ashland nor Brown Udell had apprised Near North of the PD-300 zoning or the May 15, 2006 survey.

30. According to its language, the 3.1 zoning endorsement insured against loss or damage sustained by 1200 Ashland if, as of the date of the policy, the Property was not zoned B1-3 or B3-2.

31. The Zoning Endorsement bears the date "December 23, 2004."

32. Near North did not underwrite this zoning endorsement.

33. Near North did not charge 1200 Ashland or Mr. Valevicius for the zoning endorsement.

**D.     The Insurance Claim**

34. On or about November 15, 2006, 1200 Ashland provided Lawyers Title with a notice of claim under the zoning endorsement for the Zoning Defect.

35. On or about February 5, 2007, Lawyers Title denied 1200 Ashland's claim under the zoning endorsement.

36. On or about February 12, 2007, 1200 Ashland requested Lawyers Title to reconsider its denial of 1200 Ashland's claim under the zoning endorsement.

37. On or about February 22, 2007, Lawyers Title refused to reconsider its denial of the claim.

38. Parcel 1 of the Property was rezoned from PD-300 to B3-2 in 2009.

## CONCLUSIONS OF LAW

1200 Ashland claims that its attorney made a request at the 2004 closing to add a zoning endorsement to the Owner's Policy. If so, Near North erred by failing to include the endorsement in the original policy. When a zoning endorsement is requested at closing, but missing from the final policy, a title company may later send it to the owner at no additional charge and with no new underwriting. 1200 Ashland argues that this occurred in the instant case; the issuance of the 2006 zoning endorsement was purportedly not meant to modify the Owner's policy, but merely amend an earlier oversight.

The burden of proof is on 1200 Ashland to show that a request for a zoning endorsement was made at the December 2004 closing. Only two individuals, John Resnick and Susan Rakowski, were present at the closing. However, neither can recall how the closing transpired. 1200 Ashland's case thus relies chiefly on the testimony of Gail Morris. Morris is an

4

experienced real estate attorney who did not participate in the sale of the Property. She testified that it is not unusual for a buyer's attorney to request a zoning endorsement for the first time at closing, when the lender has previously requested the same endorsement for its policy. Morris further testified that when a buyer's attorney makes such a request, the title company typically does not charge a premium for issuing it because the work has already been done on the lender's side. On the weight of common practice, 1200 Ashland argues that Resnick made such a request of Rakowski.

There is little evidence to support this proposition. Rakowski and John Lamberts, Near North's general counsel and the underwriter for the transaction, both testified that when a buyer makes a request for an endorsement at closing, company protocol requires Rakowski to contact Lamberts. If the request is grantable, Lamberts must prepare a revised proforma reflecting the change and deliver it to the closing. Lamberts testified that he received no such request during the December 2004 closing. Moreover, Rakowski's escrow file shows no record of coinciding revisions to the buyer's proforma. Indeed, all documents associated with the closing – including previously issued proformas, contemporaneous checklists, and the final Owner's policy – indicate that a 3.1 zoning endorsement was specifically requested for the Loan policy only, not the Owner's policy.

Morris also explained that when a buyer requests additional coverage after the closing – a practice known as "late dating" – title companies usually conduct an underwriting and charge a premium for the modification. 1200 Ashland makes much of the fact that Near North declined to underwrite or charge a premium for issuing the 2006 zoning endorsement, implying that it reflected already-existing coverage. Yet, both Lamberts and Jeffrey Brand, 1200 Ashland's general counsel, agreed that whether a title company charges a premium for late dating an

endorsement depends on the relationship between the company and buyer, among other factors. Moreover, Lamberts testified that Near North did not underwrite the zoning endorsement for the Owner's policy in 2006 because it assumed that no errors had been made when underwriting the exact same endorsement for the Lender in 2004. The zoning endorsement was dated "December 23, 2004" to clarify that Near North conducted no additional review beyond the date of the closing.

In light of Resnick's and Rakowski's inability to remember the 2004 closing, the voluminous paper trail produced by the transaction, and the legitimate reasons Near North may have had to issue a gratuitous endorsement without additional underwriting, Morris's speculative testimony is insufficient to prove by a preponderance of the evidence that Resnick requested a zoning endorsement at closing. As such, any of theory of liability turning on that fact fails.

1200 Ashland alternatively insists that, because the zoning endorsement is backdated "December 23, 2004," Lawyers Title is obligated to indemnify all zoning-related losses arising after that date, even if the endorsement first issued in 2006. However, the date at which the endorsement becomes effective is irrelevant if the agreement itself is void. Lawyers Title asserts that it is not bound by the endorsement's terms because 1200 Ashland did not advise Near North of material facts – namely, the existence of the Zoning Defect – prior to the endorsement's issuance. It is undisputed that prior to the October 2006 requests of 1200 Ashland and Brown Udell, neither party had disclosed to Near North or Lawyers Title that a piece of the Property had been zoned PD-300, as revealed by a May 15, 2006 survey.

The Illinois Insurance Code states that a misrepresentation in an application for insurance avoids a policy when it materially affects either the acceptance of the risk or the hazard assumed

by a company. *See* 215 ILCS 5/154; *Campbell v. Prudential Ins. Co. of America*, 155 N.E.2d 9, 11 (Ill. 1959). As in the instant case, "a failure to disclose material information on an application for insurance may constitute a misrepresentation when the omission prevents the insurer from adequately assessing the risk involved." *Methodist Med. Ctr. Of Ill. v. American Med. Sec., Inc.,* 38 F.3d 316, 316-19 (7th Cir. 1994) (citing *Garde v. Country Life Ins. Co.*, 498 N.E.2d 302, 308 (Ill. App. Ct. 1986)). "Materiality" is measured by "whether reasonably careful and intelligent men would have regarded the fact stated" – or, in this case, the omission – "as substantially increasing the chances of the event insured against, so as to cause a rejection of the application or different conditions." *Weinstein v. Metropolitan Life Ins. Co.*, 60 N.E.2d 207, 210 (Ill. 1945).

1200 Ashland made a material misrepresentation to Lawyers Title by failing to disclose the existence of the PD-300 zoned land or the results of the May 15, 2006 survey when requesting an endorsement from Near North in the fall of 2006. This information would have revealed that the land was not zoned as described in the endorsement. Naturally, a reasonable person would have refused to insure the parcel as B1-3 or B3-2 had the PD-300 zoning been disclosed.

Consequently, the Court finds for Lawyers Title on both counts. 1200 Ashland seeks to bind Lawyers Title to the terms of a phantom zoning endorsement issued in 2004, or a belated zoning endorsement issued in 2006. However, 1200 Ashland has failed to prove by a preponderance of the evidence that its attorney requested a zoning endorsement at the December 2004 closing. Moreover, the zoning endorsement issued in 2006 is void by reason of 1200 Ashland's material misrepresentations. 1200 Ashland is therefore not entitled to coverage and indemnification for damages suffered by reason of the Zoning Defect.

7

## CONCLUSION

For the foregoing reasons, the Court enters judgment in favor of Defendant Lawyers Title on the breach of contract claim. 1200 Ashland's request for entry of declaratory judgment is denied.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

**Dated:** December 31, 2010